1 | **TORRES | TORRES-STALLINGS**
2 | **A LAW CORPORATION**
David A. Torres, State Bar No. 135059
3 | 1318 "K" Street
Bakersfield, CA 93301
4 | Tel: (661) 326-0857
email: dtorres@lawtorres.com
5 | Attorneys for Defendant
JOSHUA KIMBALL
6 |

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10 |

11 | UNITED STATES OF AMERICA,          Case No.: 1:23-cr-00221-NODJ-BAM-1

12 |                    Plaintiff,      **DEFENDANT JOSHUA KIMBALL'S**
**NOTICE OF MOTION AND MOTION TO**
13 | vs.                                **REVOKE DETENTION ORDER**

14 | JOSHUA KIMBALL,                    **Date:**
15 |                    Defendant,     **Time:**
                                       **Judge:**
16 |

17 |

18 | **TO: THE HONORABLE DISTRICT COURT JUDGE; ROBERT VENEMAN-HUGHES,**

19 |

20 | **ASSISTANT UNITED STATES ATTORNEY; AND TO EVETTE PEREZ AND FRANK**

21 | **GURRERO, PRETRIAL SERVICES OFFICER:**

22 |       PLEASE TAKE NOTICE that defendant Joshua Kimball, by and through his attorney,

23 | David A. Torres, will and hereby does move this Court for an Order revoking the detention order

24 | issued on November 16, 2023, and revoking the order denying defendant's motion for bail

25 | review issued on December 7, 2023and issue an Order setting conditions of his release pending

26 |

27 | trial. The defendant requests to proceed with a hearing on this motion as soon as the matter may

28 |

be heard pursuant to the mandate of 18 U.S.C Section 3145(b) that a motion for revocation of the (detention) order "Shall be determined promptly."

## I.    Procedural Background

On October 31, 2023, a criminal complaint was filed in this action charging defendant Joshua Kimball with trafficking in firearms, unlawful transfer of NFA firearms, and unlawful transfer of firearms. [Exhibit 1; ECF Doc.1] On November 2, 2023, Joshua Kimball appeared before the Court for his initial appearance on the Complaint, a preliminary hearing was set on November 16, 2023. Detention was addressed and the Government moved for detention, the defendant consented to an interview by Pretrial Services and requested a further hearing be set for November 9, 2023, and the defendant was ordered temporarily detained. [Exhibit 2; ECF Doc. 6]

On November 8, 2023, the USA submitted a Memorandum in support of detention. [Exhibit 3; ECF Doc. 12] On November 9, 2023, a detention hearing was held where the Defendant was ordered released on O/R with numerous pretrial conditions including third party custody, home incarceration, surrender of his passport and proof of divestment of firearms. [Exhibit 4; ECF Doc. 14] On November 9, 2023, Ms. Jenny Kelsey initially agreed to serve as third-party custodian. However, after the hearing and prior to her signing the documents, she declined to be the third-party custodian.  On November 16, 2023, an arraignment and plea regarding the indictments was held and the Defendant plead not guilty. The Government then moved for an oral motion for bail review and further detention hearing due to a supplemental pretrial services report and the unavailability of the proposed third-party custodian. After the hearing was argued by both parties, Mr. Kimball was ordered detained and remanded into the custody and control of the United States Marshals Service. [Exhibit 5; ECF Doc. 15]

On December 4, 2023, Mr. Kimballs Counsel submitted a motion for bail review to appoint another suitable third-party custodian, 51-year-old Jennifer Tuttle an acquaintance of Mrs. Kelsey and Mr. Kimball who has resided in Kern County since 1988. and the hearing was set for December 7, 2023. [Exhibit 6; ECF Doc. 20] On December 4, 2023, The Government submitted an opposition for the Bail Review. [Exhibit 7: ECF Doc. 22] On December 7, 2023, a Bail Review Hearing was held before Magistrate Judge Christopher D. Baker, but the motion was denied, and Status Conference was set for February 14, 2024. [Exhibit 8; ECF Doc. 23.]

This motion comes now as Ms. Tuttle no longer wishes to serve as TPC. Over these past few months, counsel has been seeking other suitable TPC's. Recently, Mr. David Jansen has agreed to serve as Mr. Kimball's TPC.

## II.     DEFENDANT'S PERSONAL BACKGROUND

Defendant, Joshua Kimball, was born in Torrance, California. At the age of 5, his family moved north to Frazier Park, Kern County, where he resided until the age of 18. As a child, Mr. Kimball was homeschooled by his mother, Kim Hogan. His mother now resides in Palmdale, California, and is employed as an Energy Consultant for the State of California. Both Mr. Kimbal and his mother remain in contact. At the age of 18, I am informed, and believe therein, that Mr. Kimball joined the Local 409 Carpenters Union. He has been a structural carpenter for over 20+ years. In addition, he has operated as a licensed contractor/vendor in a business known as Kimball Construction, serving as a consultant for food processing building construction. At the time of his arrest, Mr. Kimball resided in Bakersfield with his former girlfriend, Jennie Kelsey. Prior to that, Mr. Kimball resided in Bakersfield with his girlfriend of 10 years, Nicole Vergano.

///

3

///

# ARGUMENT

**III.    DEFENDANT MOVES TO REVOKE THE DETENTION ORDER PURSUANT TO 18 U.S.C. § 3145 (b)**

18 U.S.C. §3145 (b) provides in relevant part:

> If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

A district court reviews *de novo* a magistrate judge's detention order under the Bail Reform Act of 1984, 18 U.S.C. §3141 *et seq. United States v. Koenig,* 912 F.2d 1190, 1191 (9th Cir. 1990). The district court is free to consider evidence presented at the revocation hearing and may hold additional evidentiary hearings if necessary. *Id.* at 1193. The district court's review of the magistrate judge's detention order is to be conducted "without deference to the magistrate's factual findings" and "without deference to the magistrate's ultimate conclusion." *Id.* at 192-93.

The defendant's motion for bail review was presented to the Magistrate Judge to protect Mr. Kimballs rights and the health and safety of the community. At the Motion for Bail Review hearing, Mr. Kimball requested he be released from custody on O/R. According to the pretrial services report, the court found that he did not pose a danger to the community and ordered that he be released to at home incarceration with a third-Party Custodian. Mr. Kimballs girlfriend Ms. Kelsey had agreed to be the custodian, but at the time of signing she chose not to follow through and chose not to allow Mr. Kimball to reside with her. The Magistrate Judge thus denied the motion for bail review finding that he could not meet the proposed conditions.

In support of Mr. Kimballs Motion to Revoke the Detention Order he submits that he can post his 2008 Dodge Ram truck that he valued as $5,000. Subsequently Mr. Kimball has secured another party who has agreed to serve as his third-party custodian. Mr. David Jansen is 67 years old, a life-long resident of Kern County, and is gainfully employed and has been employed as a corporate jet pilot for the past 50 years. He became acquainted with Mr. Kimball through friends. Mr. Jansen does not own a firearm. He is prepared to accept all obligations required by the court.

## IV.    The Bail Reform Act – 18 U.S.C. §3142

The Bail Reform Act permits a defendant to be released pending trial on personal recognizance or subject to a condition or combination of conditions that will reasonably assure the defendant appears as required and the safter of the community. 18 U.S.C. §3142(a)-(c). If, however, a defendant is ordered detained until trial, the statute allows the Court to reconsider the detention decision. 18 U.S.C. §3142(f)(2). Specifically, the statute provides that a detention hearing may be reopened:

> "At any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any person and the community." *Id.*

As set forth above, the court had previously determined that Mr. Kimball was not a danger to society and granted him release subject to a combination of conditions that would ensure that he appears in court. Although the allegations against Mr. Kimball are serious, Kimball has no prior criminal history, no prior failures to appear and no issues with narcotics or alcohol. The weight of the evidence, when coupled with the presumption of innocence is, as a

rule, not particularly probative of the issues relevant at a detention hearing (risk of non-appearance and specific future danger) because Mr. Kimball is presumed to be innocent. The Ninth Circuit has repeatedly emphasized "that the weight of the evidence is the least important of the various factors" at a detention hearing. *Motamedi*, 767F.2d at 1408; *see also* § 3142(j) – nothing in this section shall be construed as modifying or limiting the presumption of innocence. See, 18 U.S.C. § 3142(j). Should the decision between detention vs. release be a close call, "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2nd at 1408. In the case herein, Mr. Kimball has ties to the central valley and southern California where his mother resides. Mr. Kimball has resided in Kern County for nearly all his life. His employment has taken him all over the country and overseas, however, he always returns to his roots here in Bakersfield. Nonetheless, Mr. Kimball has surrendered his passport and had not traveled outside of California since 2015.

Mr. Kimball does not pose a threat of danger to the community or other people. He does not use or possess illegal drugs or state authorized marijuana. He agrees to submit to the search of his person or property by the Supervising Agency. Moreover, he agrees to the application of an electronic monitoring device. These factors, and those mentioned below, when weighed together, ensure that Mr. Kimball will appear during this case and that he is not a flight risk.

Even when a court finds a risk of nonappearance or danger, the government still bears the burden of proving by a clear preponderance of the evidence why conditions cannot reasonably assure the defendant's appearance, or by clear and convincing evidence why conditions cannot reasonably assure the safety of the community. *Hir*, 517 F.3d at 1091-92. "Reasonably assure" *does not mean* "guarantee." *Hir*, 517 F.3d at 1092 n.9.

a.   **Combination of Factors Supporting Release**

The PTS report will show there is available Third-Party Custodian who has agreed to serve in said capacity on behalf of Mr. Kimball who has:

• Sufficient family ties to the community.

• No failures to appear nor extensive criminal history.

• Is willing to wear an electric monitor.

• Is willing to waive 4th Amendment safeguards.

• Family members and friends willing to serve as TPC.

• Travel restrictions within the Eastern District of California.

Mr. Kimball contends that all of the information presented to the court within this motion is sufficient information to warrant a revocation of the detention order.

**CONCLUSION**

Based upon the foregoing, Mr. Kimball requests that the Court finds a combination of factors and/or conditions exist supporting the release of Mr. Kimball. Mr. Kimball will appear at all pretrial proceedings in this case, and there is no lawful basis for his pretrial detention.

Dated: April 19, 2024                    Respectfully Submitted,

                                          */s/ David A. Torres*
                                          David A. Torres
                                          Attorney for Joshua Kimball

# EXHIBIT 1

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California ▾

| | FILED |
|---|---|
| | **Oct 31, 2023** |
| | CLERK, U.S. DISTRICT COURT |
| | EASTERN DISTRICT OF CALIFORNIA |

United States of America )
v. )
)
JOSHUA RUIC KIMBALL )
)
)
)

Case No. 5:23-mj-00041-CDB

**SEALED**

_____
            *Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____October 13, 2023____ in the county of ____Kern____ in the
____Eastern____ District of ____California____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 933 | Trafficking in Firearms |
| 26 USC 5861(e) | Unlawful Transfer of NFA Firearms |
| 18 USC 922(b)(2) | Unlawful Transfer of Firearms |
| | Maximum penalty is 30 years imprisonment; $750,000 fine; $300 special assessment and 9 years of supervised release. |

This criminal complaint is based on these facts:

See Affidavit of ATF Special Agent Sahil Sharma, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

*Sahil Sharma*
_____
*Complainant's signature*

Sahil Sharma, ATF Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

_____
*Judge's signature*

Date: ____October 31, 2023____

City and state: ____Bakersfield, California____    Christopher D. Baker, U.S. Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

JOSHUA RUIC KIMBALL

     Defendants.

CASE NO. 5:23-mj-00041-CDB

AFFIDAVIT OF SPECIAL AGENT SAHIL
SHARMA IN SUPPORT OF COMPLAINT

## Table of Contents

I.  **INTRODUCTION**.................................................................................................2

II. Affiant's Background..............................................................................................2

III. PROBABLE CAUSE..............................................................................................3

 A. Introduction.....................................................................................................3

 B. Over 100 crime guns have been traced to KIMBALL through eTrace of firearms recovered in crimes between February 2021 and the present. .............................................................3

 C. KIMBALL surrenders an FFL in Missouri in November 2021 and obtains a different FFL in California in March 2022. ....................................................................................................15

 D. In a June 14, 2023, undercover operation, KIMBALL discusses his "gun club" allowing members to do a one-time Livescan fingerprinting and then obtain firearms without completing any required forms or complying with the requirements for transferring firearms. .............................................16

 E. On July 27, 2023, a UC visited Show Off Sports LLC, and KIMBALL discussed the "gun club" or the "country club for gun enthusiasts" in further detail, including sales of silencers and short-barreled rifles.........17

 F. On October 13, 2023, a UC purchased a short-barreled rifle, a handgun, and two suppressors from KIMBALL. ......................................................................................................18

 G. On October 20, 2023, in a UC call with KIMBALL, KIMBALL discusses structuring a firearms transaction to avoid detection. .......................................................................23

IV. **CONCLUSION** .................................................................................................24

## I.    **INTRODUCTION**

1.    This Affidavit in support of probable cause for the issuance of an arrest warrant arising from on a complaint charging **Joshua Ruic KIMBALL** (hereinafter **KIMBALL**) for violations of Title 18, United States Code, Section 933, unlawful trafficking in firearms; Title 26, United States Code, Section 5861(e), unlawful transfer of a National Firearms Act firearm; and Title 18, United States Code, Section 922(b)(2), unlawful transfer of firearm in violation of State law The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all information known to me and other law enforcement investigators. Rather, this affidavit serves to establish probable cause for the arrest of **KIMBALL**.  However, I have not omitted any fact that I believe negates probable cause.

2.    The information contained in this Affidavit is based upon my personal observations and training and, where noted, information related to me by other law enforcement officers and/or agents.

## II.    **AFFIANT'S BACKGROUND**

4.    I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, and Firearms (ATF) and have been employed since April of 2021. I am currently assigned to the ATF Fresno Field Office, specializing in investigations involving the illegal possession of firearms and other federal offenses involving firearms. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, GA and have received approximately 472 hours of training in areas including firearms, constitutional law, federal criminal law. I have also received approximately 530 hours of training at the Bureau of Alcohol, Tobacco, Firearms & Explosives National Academy with the areas including firearms and ammunition identification, firearms trafficking, alcohol and tobacco diversion, and explosives and fire/arson investigations.

5.    Based upon my training experience, investigative efforts, and information and insight given to me by other Special Agents and law enforcement officers, I submit there is probable cause to believe that **KIMBALL** committed violations of 26 U.S.C. § 5861(e) and 18 U.S.C. §§ 922(b)(2) and 933.

COMPLAINT AFFIDAVIT                        2

### III.   PROBABLE CAUSE

#### A.   Introduction

As further described herein, in April 2023, Fresno Police Department discovered that firearms recovered in criminal investigations traced back to Joshua KIMBALL.  Upon further investigation and in a joint investigation with ATF, they discovered the KIMBALL possessed an FFL in Missouri that he surrendered in 2021.  KIMBALL also had transferred hundreds of firearms to himself, and not to his FFL.  Those firearms from his personal collection were showing up in crimes throughout California, Arizona, Nevada and New Mexico.  To date, at least 102 firearms have been recovered that trace back to KIMBALL personally.  After discovering this evidence indicating KIMBALL was illegally transferring firearms, ATF and Fresno PD continued to investigate KIMBALL through the use of covert operations.  KIMBALL had obtained another FFL and opened a store in Bakersfield, California.  KIMBALL sold firearms and accessories at this store.  He also created a scheme under which he sold guns without individual background checks or paperwork under the guise of a "Sports Association."  Undercover officers (hereinafter referred to as "UC's") went to KIMBALL's business on several occasions.  UCs joined the "Sports Association," and then purchased multiple firearms, including firearms in violation of the National Firearms Act, specifically two silencers and a short-barreled rifle.  These weapons were sold without completing the requirements of the National Firearms Act, including registering the weapons with an approved application to the Secretary of the Treasury, as well as without completing requirements under California law, including a background check or waiting period. After selling these firearms, based on my training and experience, I believe in a recorded call with the UC, KIMBALL advised the UC how to conceal illegal firearms transfers should the UC wish to sell weapons to a third party.

#### B.   Over 100 crime guns have been traced to KIMBALL through eTrace of firearms recovered in crimes between February 2021 and the present.

6.     In April of 2023, Central Valley Crime Gun Taskforce (CVGTF) Fresno Police Department (FPD) Detective Cha Thao reviewed eTrace information on firearms recently seized during a search warrant. Based on my training and experience, I know that eTrace is an application administered by the Bureau of Alcohol, Tobacco, Firearms and Explosives (referred to hereinafter as

COMPLAINT AFFIDAVIT                                    3

"ATF") that is "a web-based application that is used to trace the purchase and/or use history of firearms used in violent crimes. https://www.atf.gov/resource-center/fact-sheet/fact-sheet-etrace-internet-based-firearms-tracing-and-analysis. Investigators learned one of the firearms was originally purchased by **KIMBALL**. Law enforcement queried **KIMBALL** through eTrace, which revealed that sixteen (16) firearms were traced back to him in the Fresno, CA area and a total of seventy-six (76) firearms have been traced back to **KIMBALL** in California, Arizona, Nevada, and Mexico since 2020. Based on my training and experience, I know that tracing a firearm is the systemic tracking of the movement of a firearm up to the point of sale from a licensed dealer. Law enforcement initiates a trace is initiated when a firearm is recovered during an investigation. Each trace is assigned a unique trace number. As of October 2023, the total number of traces has increased to one hundred and two (102). The first firearm that traced back to **KIMBALL** was recovered in Los Angeles in February 2021. Two of the traced firearms have been linked to six separate shootings via National Integrated Ballistics Information Network (NIBIN). The firearm recoveries were from members of different gangs, convicted felons, and juveniles. The ATF tracing records indicate that the traced firearms were transferred from **KIMBALL**'s former Federal Firearms License (FFL) to him personally as the last transfer before the firearms were recovered. Based on my training and experience, I know that an FFL issued pursuant to 18 U.S.C. § 923 allows an individual to legally engage in the firearms business, including obtaining firearms directly from manufacturers, purchasing firearms for resale from private individuals, and retailing firearms. In order to obtain an FFL, an individual goes through a background check with the ATF, where they must meet certain qualifications for their gun store.

7.     The above traces include, but are not limited to the following:

| Trace | Summary |
|---|---|
| 1 | On February 10, 2021, Glendale Police Department responded to a domestic violence in progress call and arrested O.V. for California Penal Code 243 (Battery against spouse) and Cal. P.C. § 25850(A) (Carrying loaded firearm in public). The pistol was traced back to **KIMBALL** as the original purchaser. |
| 2 | On April 19, 2021, Clark County School District Police cited D.D.-1 for reckless driving (going 75 miles per hour in a 35 miles per hour zone). D.D.-1 was on probation and was unable to be in possession of a firearm. Officers conducted an inventory search |

| | | |
|---|---|---|
| | | of the vehicle and found a pistol in the vehicle. The pistol was traced back to **KIMBALL** as the last purchaser of the firearm. |
| | 3 | On April 19, 2021, Special Agents from the ATF, DEA, and HSI conducted the controlled purchase of two firearms from H.F. in Los Angeles, CA. H.F.is a convicted felon and narcotics trafficker who operates in the Los Angeles area. One of the shotguns purchased traced back to **KIMBALL** as the original purchaser. |
| | 4 | On May 15, 2021, Los Angeles Police Department arrested K.Z. for Cal. P.C. § 29800 (Felon in possession of a firearm). The pistol was traced back to **KIMBALL** as the last purchaser of the firearm. |
| | 5 | On May 24, 2021, Los Angeles Sheriff's Department arrested A.C.-1 for Cal. H.S. § 11370.1 (Possession of a Controlled Substance while armed with a firearm), Cal. H.S. § 11378 (Possession of methamphetamine for the purpose of Sales), Cal. P.C. § 30600(a) (Manufacturing of an assault weapon) and Cal. P.C. § 30605(a) (Possession of an assault weapon). A pistol that was recovered was traced back to **KIMBALL** as the last purchaser of the firearm. |
| | 6 | On May 28, 2021, Los Angeles Police Department found a firearm in a parking garage. The pistol was traced back to **KIMBALL** as the original purchaser. |
| | 7 | On May 29, 2021, Fresno Police Department arrested J.C. for Cal. P.C. § 25400 (Carrying concealed weapon without a permit) and D.G. for Cal. P.C. § 25400(A)(1) (Concealed carrying weapon in vehicle), Cal. P.C. § 25850(A) (Carrying loaded firearm in public) and Cal. P.C. § 25850(C) (Carrying loaded handgun while being a member of a gang (East Lane Crips). J.C. and D.G. have both been validated as East Lane Crip gang members by Fresno M.A.G.E.C.[1] The pistol recovered from J.C. was traced back to **KIMBALL** as the last purchaser. |
| | 8 | On June 9, 2021, A.C.-2 was shot and killed in his vehicle during a drug transaction. Los Angeles Police Department Detectives searched the vehicle and found a pistol behind the front passenger seat. The pistol was traced back to **KIMBALL** as the last purchaser. |

---

[1] Gang detectives at the Fresno Multi-Agency Gang Enforcement Consortium (M.A.G.E.C.) validate gang members based on a set of objective criteria, including gang association, tattoos, social media and others. Individuals who meet multiple criteria are considered members by gang experts.

| 9 | On June 23, 2021, Los Angeles County Sheriff's Department arrested M.C. for Cal. P.C. § 29800 (Felon in possession of a firearm), Cal. H.S. § 11370.1 (Possession of a controlled substance with a loaded firearm), Cal. H.S. § 11378 (Possession of a controlled substance for sales), and Cal. H.S. § 11351 (Possession of a controlled substance for sales). The pistol was traced back to **KIMBALL** as the last purchaser. |
| 10 | On July 11, 2021, California Highway Patrol arrested M.L. for California Vehicle Code Section 23152(a) (Driving under the influence), California Vehicle Code 23152(b) (DUI .08% blood alcohol content or higher), California Vehicle Code Section 12500(a) (Unlicensed driver), Cal. P.C. § 25850 (Carrying a concealed loaded firearm in vehicle). The pistol was traced back to **KIMBALL** as the last purchaser. |
| 11 | On July 29, 2021, Fresno Police Department conducted a traffic stop and arrested K.G. for Cal. P.C. § 25850(a) (Carrying a loaded firearm in public) and Cal. P.C. § 25850(c) (Carrying unregistered firearm). J.E., was a passenger. K.G. took ownership of the firearm recovered. The pistol was traced back to **KIMBALL** as the last purchaser. |
| 12 | On August 17, 2021, Clovis Police Department arrested A.S.-1 for Cal. P.C. § 25850(a) (Carrying a loaded firearm in public) and Cal. P.C. § 32310 (Possession of a large capacity magazine). The pistol was traced back to **KIMBALL** as the last purchaser. |
| 13 | On August 18, 2021, Delano Police Department arrested D.D.-2 for Cal. P.C. § 3056 (Violation of parole), California Penal Code 30305 (Possession of ammunition by prohibited person), Cal. P.C. § 29800 (Possession of a firearm by a felon), Cal. P.C. § 25850 (Carrying loaded firearm in a public place), Cal. P.C. § 25400 (Carrying concealed firearm while being a member of a gang). The pistol was traced back to **KIMBALL** as the last purchaser. |
| 14 | On August 19, 2021, Glendale Police Department arrested D.M.-1 for attempting to evade an officer during a traffic stop. Mouradian was arrested for Cal. H.S. § 11351 (Possession of a controlled substance for sale), Cal. H.S. § 11370 (Possession of a Controlled Substance while armed with a firearm), Cal. P.C. § 148 (Obstruction a peace officer), Cal. P.C. § 29800 (Possession of a firearm by a felon), Cal. P.C. § 12316 (Prohibited owner of ammunition), Cal. H.S. § 11377 (Possession of a controlled substance). D.M.-1 is an Armenian Pride gang member according to gang detectives at Glendale P.D. The pistol was traced back to **KIMBALL** as the last purchaser. |
| 15 | On August 20, 2021, Glendale Police Department arrested H.K. for Cal. P.C. § 25850 (Carrying loaded firearm in public), California Vehicle Code Section 14601 (Driving on a suspended license), Cal. H.S. § 11360 (Transporting marijuana for sale). The pistol was traced back to **KIMBALL** as the last purchaser. |

COMPLAINT AFFIDAVIT

6

| 16 | On August 31, 2021, Kern County Probation arrested F.M. for Cal. P.C. § 29815 (possession of a firearm in violation of probation condition), Cal. P.C. § PC29610 (minor in possession of a concealable firearm), California Penal Code 29650 (possession of live ammunition by a minor), Cal. P.C. § 25850 (carrying a loaded firearm without registration), Cal. P.C. § 29805 (possession of a firearm with a 10-year prohibition) and Cal. P.C. § 29820 (possession of a firearm in violation of probation stemming from prior adjudication of specified offense). One of the pistols recovered were traced back to **KIMBALL** as the last purchaser. |
|---|---|
| 17 | On September 5, 2021, Fresno Police Department responded to a call for shots fired in the area. Officers located spent casings in the roadway and obtained surveillance video from the surrounding houses. During a canvass of the area, officers located a pistol that had ammunition that matched the head-stamps of the spent casings found earlier. This pistol was traced back to **KIMBALL** as the last purchaser. |
| 18 | On September 17, 2021, Glendale Police Department arrested G.S. for Cal. P.C. §Cal. P.C. § 29800 (Possession of a firearm by a felon), Cal. H.S. § 11370.1 (Possession of a Controlled Substance while armed with a firearm). The pistol was traced back to **KIMBALL** as the last purchaser. |
| 19 | On September 21, 2021, Clovis Police Department arrested A.S.-1 for Cal. P.C. § 246.3 (Willful discharge of firearm in a grossly negligent manner), Cal. P.C. § 29180 (Owning firearm without serial number), Cal. P.C. § 496 (Receiving known stolen property). One of the pistols recovered was traced back to **KIMBALL** as the last purchaser. A.S.-1 was also arrested in August of 2021 with a pistol traced to KIMBALL. |
| 20 | On October 30, 2021, Fresno Police Department arrested C.D. for Cal. P.C. § 29800 (Possession of a firearm by a felon), Cal. P.C. § 25850 (Carrying a loaded handgun not registered), Cal. P.C. § 148 (Obstruction of a peace officer), Cal. P.C. § 25850 (Carrying a loaded firearm in public), and Cal. P.C. § 25400 (Carrying concealed weapon in vehicle). The pistol was traced back to **KIMBALL** as the last purchaser. |
| 21 | On November 11, 2021, the Mexicali Municipal Police Department responded to the dispatch report of a found firearm inside the bathroom of a department store in Mexicali, Baja California. The officers seized one pistol and eight rounds of ammunition. The pistol was traced back to **KIMBALL** as the last purchaser. |
| 22 | On November 12, 2021, Los Angeles Police Department conducted a search warrant and arrested N.G. for Cal. H.S. §Cal. H.S. § 11370 (Possession of a Controlled Substance while armed with a firearm). During the search warrant, officers recovered a firearm, approximately 536 marijuana plants and 18 prepackaged 1 lb bags of processed marijuana. One of the pistols recovered was traced back to **KIMBALL** as the last purchaser. |

| 23 | On December 8, 2021, Pasadena Police Department arrested A.S.-2 for Cal. P.C. § 25850(c) (Carrying unregistered firearm) and Cal. H.S. § 11370.1 (Possession of a Controlled Substance while armed with a firearm). The pistol was traced back to **KIMBALL** as the last purchaser. |
| 24 | On December 8, 2021, Delano Police Department arrested A.G.-1 during a probation search of his residence for Cal. P.C. § 29815 (Possession of a firearm in violation of probation condition), Cal. P.C. § 29820 (Possession of a firearm by juvenile), Cal. P.C. § 25850 (Carrying unregistered firearm), Cal. P.C. § 29610 (Minor in possession of a concealable firearm), Cal. P.C. § 29650 (Possession of live ammunition by a minor).. The pistol traced back to **KIMBALL** as the last purchaser. |
| 25 | On December 13, 2021, Fresno Police Department responded to a 16 round shot spotter alert and were advised that four shooting victims had shown up at the hospital. A witness at the scene had reported seeing multiple males shooting at each other as they were running. Multiple vehicles at the scene of the shooting had bullet hole damage. Officers putting up crime scene tape located a Sig Sauer 9mm P365 pistol on the sidewalk. The pistol was traced back to **KIMBALL** as the last purchaser. |
| 26 | On December 31, 2021, Tulare County Sheriff's Department responded to a call for shots fired. Upon arrival, deputies heard gunfire coming from the backyard. One of the individuals in the backyard ran from deputies but was detained. After detaining all of the individuals, deputies searched the backyard and found a Glock pistol and a fully automatic AR-15 style short barrel. The pistol recovered was traced back to **KIMBALL** as the last purchaser. |
| 27 | On January 8, 2022, Fresno Police Department responded to a domestic violence call and arrested G.R. for Cal. P.C. § 25400 (Carrying concealed weapon without a permit), Cal. P.C. § 25850(c) (Carrying unregistered firearm), Cal. P.C. § 236 (False imprisonment), California Penal Code 30305 (Possession of ammunition by prohibited person). The pistol traced back to **KIMBALL** as the original purchaser. |
| 28 | On January 27, 2022, Visalia Police Department conducted a traffic stop on a vehicle. The passenger of the vehicle, W.S., indicated he was on probation. The officer also obtained consent to search the vehicle from the driver. Officers found a loaded pistol in the center console of the vehicle and W.S. claimed ownership. W.S. was arrested for Cal. P.C. § 29800 (Felon in possession of a firearm), California Penal Code 30305 (Possession of ammunition by prohibited person), Cal. P.C. § 25850(A) (Carrying loaded firearm in public) and Cal. P.C. § 32310 (Possession of a large capacity magazine). The pistol was traced back to **KIMBALL** as the last purchaser. |

COMPLAINT AFFIDAVIT

8

| | |
|---|---|
| 29 | On February 19, 2022, Long Beach Police Department arrested A.C.-3 for Cal. H.S. § 11379(A) (Transporting controlled substance),  Cal. H.S. § 11370 (Possession of a Controlled Substance while armed with a firearm), Cal. H.S. § 11378 (Possession of a controlled substance for the purpose of sales), Cal. P.C. § 29800 (Felon in possession of a firearm), California Penal Code 30305 (Possession of ammunition by prohibited person), and Cal. P.C. § 25850(A) (Carrying loaded firearm in public). A.C.-3 has multiple prior felony convictions including convictions for first degree burglary, possession of a controlled substance while armed, and possession of a controlled substance for sale. The pistol traced back to **KIMBALL** as the original purchaser. |
| 30 | On February 19, 2022, Riverside County Sheriff's Office arrested J.P.-1 for Cal. P.C. § 25400 (Concealed carrying weapon). This pistol was traced back to **KIMBALL** as the original purchaser. |
| 31 | On February 28, 2022, Sanger Police Department arrested R.U. after a vehicle pursuit in a stolen vehicle. R.U., who Sanger P.D. has documented as a Olivo Street Bulldog and on Federal Probation for firearms charges, was the passenger in the vehicle and arrested for Cal. P.C. § 29800 (Felon in possession of a firearm), California Penal Code 30305 (Possession of ammunition by prohibited person), Cal. P.C. § 25850(A) (Carrying loaded firearm in public), Cal. P.C. § 496 (Possession of stolen vehicle), Cal. P.C. § 25400 (Carrying concealed firearm as gang member). The pistol was traced back to **KIMBALL** as the original purchaser. |
| 32 | On March 3, 2022, Shafter Police Department executed a search warrant and arrested B.M. for Cal. P.C. § 186.22 (Participating in a gang) and Cal. P.C. § 212.5 (Robbery second degree). B.M. is a self-admitted drop out of the "East Side" Northerner gang. The pistol recovered during the search warrant was traced back to **KIMBALL** as the original purchaser. |
| 33 | On March 18, 2022, Kern County Sheriff's Office conducted a parole search and arrested D.T. for Cal. H.S. § 11550e (Possession of firearm under the influence of a specific controlled substance), Cal. P.C. § 29800 (Felon in possession of a firearm), California Penal Code 30305 (Possession of ammunition by prohibited person),  Cal. P.C. § 25850(C) (Carrying loaded handgun while being a member of a gang (Varrio Waso Rifas), Cal. H.S. § 11360 (Transporting marijuana for sale), and Cal. P.C. § 466 (Possession of burglary tools). The pistol traced back to **KIMBALL** as the original purchaser. |

| 34 | On March 19, 2022, Bell Gardens Police Department arrested J.M. after a traffic stop for having a firearm and a kilo of suspected cocaine worth approximately $20,000. The pistol traced back to **KIMBALL** as the original purchaser. |
|----|---|
| 35 | On March 22, 2022, Delano Police Department officers recovered a Glock pistol on the side of the freeway that was thrown out of a vehicle one day prior by I.C. during a vehicle pursuit. I.C. has several gang affiliated tattoos indicating he is a member of the Norteno Gang. I.C. was arrested for Cal. P.C. § 25400(A)(1) (Concealed carrying weapon in vehicle) and Cal. P.C. § 25400(c)(3) (Concealed carrying a weapon by a criminal street gang member). The pistol recovered was traced back to **KIMBALL** as the original purchaser. |
| 36 | On March 24, 2022, Glendale Police Department arrested M.T. for Cal. P.C. § 422 (Criminal threats), Cal. P.C. § 245 (Assault with deadly weapon), Cal. P.C. § 273.5 (Inflicting corporal injury to spouse), Cal. P.C. § 273 (Child cruelty). Police responded to a high school regarding a student who had reported a domestic violence incident involving her and her parents. A firearm was surrendered by M.T.'s wife to police. The revolver was traced back to **KIMBALL** as the original purchaser. |
| 37 | On March 24, 2022, Clovis Police Department arrested R.O. for Cal. H.S. § 11370 (Possession of a Controlled Substance while armed with a firearm), Cal. P.C. § 25400(A)(1) (Concealed carrying weapon in vehicle), California Penal Code 30305 (Possession of ammunition by prohibited person), and Cal. P.C. § 25850(A) (Carrying loaded firearm in public). The pistol traced back to **KIMBALL** as the original purchaser. |
| 38 | On March 29, 2022, M.V., an Olivo Street Bulldog gang member, led Sanger Police Department on a pursuit after an attempted traffic stop. At the end of the pursuit, M.V.'s vehicle collided with a residence. M.V.'s vehicle nearly hit a 4-year-old child; however, a woman checking her mail was able to push the child to safety. While the child survived, the woman was killed by the collision. M.V. had two passengers who were also Olivo Street Bulldogs. Gang detectives as Sanger P.D. identified all three individuals as Olivo Street Bulldogs. Witnesses contacted the police to let the know they had observed a firearm being thrown out of the vehicle during the pursuit. The pistol recovered from the incident was traced back to **KIMBALL** as the original purchaser. |
| 39 | On April 12, 2022, Sanger Police Department conducted a search warrant on R.M.'s residence for selling narcotics to minors and located multiple firearms. R.M. was arrested for Cal. H.S. § 11361(a) (Sale of marijuana to a minor), Cal. P.C. § 25200 (Allowing access of a firearm to a child), California Penal Code 273a (Willful cruelty to a child), and Cal. P.C. § 30605 (Possession of an assault weapon). One of the pistols located traced back to **KIMBALL** as the original purchaser. |

| | |
|---|---|
| 40 | On May 5, 2022, Tulare County Sheriff's Department conducted a traffic stop on a vehicle matching the description of a vehicle involved in an attempted carjacking earlier in the week. The driver, L.A., was arrested for Cal. P.C. § 25400(A)(3) (Concealed carrying weapon in vehicle). L.A. stated he is associated with the Norteno street gang. The pistol traced back to **KIMBALL** as the original purchaser. |
| 41 | On May 7, 2022, Fresno Police Department arrested A.C.-4 for Cal. P.C. § 25850(A) (Carrying loaded firearm in public place), Cal. P.C. § 25850(C)(6) (Carrying loaded unregistered handgun), Cal. P.C. § 25400 (Carrying concealed firearm in vehicle), and Cal. P.C. § 32310 (Possession of a large capacity magazine). C.V.was also detained during the incident.The pistol traced back to **KIMBALL** as the original purchaser. |
| 42 | On May 7, 2022, Fresno Police Department arrested D.M.-2, a convicted felon. D.M.-2 was arrested for multiple charges including Cal. H.S. § 11378 (Possession of controlled substance for the purpose of Sales), Cal. H.S. § 11379(A) (Transporting controlled substance), Cal. P.C. § 30605(a) (Possession of an assault weapon), Cal. P.C. § 29800 (Felon in possession of a firearm), and California Penal Code 30305 (Possession of ammunition by prohibited person). The pistol traced back to **KIMBALL** as the original purchaser. |
| 43 | On May 26, 2022, California Highway Patrol arrested K.A. for Cal. P.C. § 25400 (Carrying concealed weapon without a permit). The pistol was traced back to **KIMBALL** as the original purchaser. |
| 44 | On June 13, 2022, Glendale Police Department arrested H.K. for California Penal Code 246.3 (Illegal firearm discharge) and Cal. P.C. § 496 (Receiving known stolen property). H.K. also had an active warrant for a previous weapons charge. H.K.'s downstairs neighbor called the police for a bullet fragment she found in her kitchen. The rifle was traced back to **KIMBALL** as the original purchaser. H.K. had previously been arrested with a gun traced to **KIMBALL** in August of 2021 when he was also transporting marijuana for sale. |

| 45 | On June 30, 2022, Fresno Police Department arrested A.S.-3 and C.M. after a short vehicle pursuit. During the pursuit, a satchel style bag was thrown out of the vehicle which contained multiple firearms. Both suspects arrested were validated as Bulldog gang members by Fresno M.A.G.E.C. One of the pistols recovered traced back to **KIMBALL** as the original purchaser. |
|---|---|
| 46 | On August 20, 2022, Fresno Police Department arrested G.H. during a traffic stop where a loaded handgun and narcotics were recovered. G.H. was arrested for California Penal Code 30305 (Possession of ammunition by prohibited person), Cal. H.S. § 11378 (Possession of methamphetamine for the purpose of Sales), Cal. H.S. § 11370 (Possession of a Controlled Substance while armed with a firearm), and Cal. P.C. § 29800 (Felon in possession of a firearm). The pistol traced back to **KIMBALL** as the original purchaser. |
| 47 | On September 21, 2022, Fresno Police Department arrested A.G.-2 for Cal. P.C. § 25850 (Carrying loaded handgun not the owner of), Cal. P.C. § 25400 (Carrying concealed weapon without a permit), Cal. P.C. § 32310 (Possession of a large capacity magazine), Cal. H.S. § 11351 (Possession of a controlled substance for sales), and Cal. H.S. § 11370 (Possession of a Controlled Substance while armed with a firearm). The pistol recovered was traded back to **KIMBALL** as the original purchaser. |
| 48 | On October 20, 2022, Kern County Sheriff's Office conducted a search warrant and arrested J.G., C.C., A.G.-1, and V.N., all documented[2] Northern gang members. J.G. was arrested for Cal. P.C. § 186.22 (Participating in a gang), Cal. P.C. § 182 (Conspiracy to commit crime), Cal. P.C. § 135 (Destroy evidence), Cal. P.C. § 23920 (Possession of a firearm without identification marks), Cal. P.C. § 29800 (Felon in possession of a firearm) and California Penal Code 30305 (Possession of ammunition by prohibited person). A pistol recovered during the search traced back to **KIMBALL** as the original purchaser. A.G.-1 had previously been arrested in December of 2021 with a gun traced to KIMBALL. |
| 49 | On November 19, 2022, Delano Police Department arrested D.P. for California Vehicle Code Section 2800.2 (Reckless evading), Cal. P.C. § 25400 (Carrying concealed as an active gang member), Cal. P.C. § 29800 (Felon in possession of a firearm), Cal. P.C. § 25850 (Carrying loaded as a gang member (Northern Delano Street gang member)), California Penal Code 30305 (Possession of ammunition by prohibited person), Cal. P.C. § 186.22 (Promoting criminal street gang).  . The pistol found in the vehicle was traced back to **KIMBALL** as the original purchaser. |
| 50 | On December 3, 2022, Los Angeles Police Department arrested A.L. and P.F. for Cal. P.C. § 215 (Attempted Carjacking). Two firearms were recovered during the arrest and one of the firearms traced back to **KIMBALL** as the original purchaser. |

---

[2] Based on my training and experience, I know "documented" in the context of gang membership means that a law enforcement officer wrote a report based on factors the officer ascertained supported the conclusion the individual was a gang member.

COMPLAINT AFFIDAVIT

12

| 51 | On December 7, 2022, Fresno Police Department arrested S.C. for an incident regarding a shooting and domestic disturbance. The firearm recovered was traced back to **KIMBALL** as the original purchaser. |
| --- | --- |
| 52 | On December 18, 2022, Los Angeles Police Department arrested M.A. for Cal. P.C. § 29800 (Felon in possession of a firearm). The pistol was traced back to **KIMBALL** as the original purchaser. |
| 53 | On January 20, 2023, Burbank Police Department arrested R.K. for Cal. H.S. § 11370 (Possession of a Controlled Substance while armed with a firearm), Cal. P.C. § 29800 (Felon in possession of a firearm), and Cal. P.C. § 148 (Obstruction a peace officer). R.K. has an extensive criminal history to include several prior arrests / convictions for drug sales, transportation of drugs, identity theft, forging documents, receiving stolen property, access card theft, perjury, illegal entry into the United States and a fugitive from justice warrant. R.K. is also a convicted felon and unable to possess firearms. One of the firearms recovered traced back to **KIMBALL** as the original purchaser. |
| 54 | On February 2, 2023, Los Angeles Police Department conducted a search warrant and arrested G.B. G.B. was arrested for Cal. P.C. § 29800 (Felon in possession of a firearm) and Cal. P.C. § 182.5 (Criminal street gang participation / Eastside Wilmas). The revolver recovered during the warrant was traced back to **KIMBALL** as the original purchaser. |
| 55 | On February 25, 2023, Fresno Police Department conducted a search warrant and arrested S.B., S.A., F.R., and E.Q. for a series of bombings that occurred in the Fresno Area. S.B. is a member of the Fresneck gang. Investigators found several white power and neo-Nazi paraphernalia such as a mirror with red sticks that read "White Power World Wide" with a red swastika, "SS" signs, a curious George doll hanging on a noose in the garage, and a jewelry box with a male holding a Nazi Party Flag which contained white supremacy propaganda (patches and stickers). Investigators also found bomb making chemicals and materials. The pistol recovered during the search warrant was traced back to **KIMBALL** as the original purchaser. |
| 56 | On February 26, 2023, Kern County Sheriff's Office conducted a traffic stop and arrested J.I., E.M.-1, E.M.-2, and R.G. All four arrestees were members of the Varrio Wasco Rifa gang. A firearm was recovered in the vehicle and traced back to **KIMBALL** as the original purchaser. |
| 57 | On March 9, 2023, Los Angeles Police Department arrested J.L.-1 for Cal. H.S. § 11370.1 (Possession of a Controlled Substance while armed with a firearm) and A.L. for Cal. H.S. § 11366 (Maintaining a place for sale for the sales of narcotics). J.L.-1 has a felony conviction for the possession of a controlled substance for sale.  One of the pistols recovered were traced back to **KIMBALL** as the original purchaser. |

COMPLAINT AFFIDAVIT

13

| 58 | On March 21, 2023, J.H., who Fresno M.A.G.E.C. validated as a member of the Calaveras Street Bulldog gang, was arrested for the shooting of two Bulldog "dropouts" on August 11, 2022. J.H. was arrested for Cal. P.C. § 29800 (Felon in possession of a firearm), Cal. P.C. § 664/187 (Attempted murder), and California Penal Code 30305 (Possession of ammunition by prohibited person).  The pistol recovered was traced back to **KIMBALL** as the original purchaser. |
|---|---|
| 59 | On April 11, 2023, Los Angeles County Sheriff's Department arrested T.R. for Cal. P.C. § 29800 (Felon in possession of a firearm). The pistol recovered traced back to **KIMBALL** as the original purchaser. |
| 60 | On April 14, 2023, Tulare County Sheriff's Office arrested S.M. for California Vehicle Code Section 12500(a) (Unlicensed driver), Cal. P.C. § 25850 (Carrying a concealed loaded firearm in vehicle). The pistol traced back to **KIMBALL** as the original purchaser. |
| 61 | On May 18, 2023, Los Angeles County Sheriff's Department arrested J.L.-2 for Cal. H.S. § 11370 (Possession of a Controlled Substance while armed with a firearm). One of the pistols traced back to **KIMBALL** as being the original purchaser. |
| 62 | On May 24, 2023, Fresno Police Department arrested E.L. for Cal. P.C. § 29800 (Felon in possession of a firearm), Cal. P.C. § 25400 (Carrying concealed weapon without a permit), California Penal Code 30305 (Possession of ammunition by prohibited person), Cal. P.C. § 25850 (Carrying loaded handgun not the owner of), Cal. P.C. § 242 (Battery against peace officer), Cal. P.C. § 3056 (Violation of parole). The pistol was traced back to **KIMBALL** as the original purchaser. |
| 63 | On May 26, 2023, Parlier Police Department arrested C.B. for Cal. P.C. § 25850 (Carrying loaded in public), Cal. P.C. § 29800 (Felon in possession of a firearm), Cal. P.C. § 30305 (Possession of ammunition by prohibited person), and Cal. H.S. § 11379(A) (Transporting controlled substance). The pistol recovered during the incident traced back to **KIMBALL** as the original purchaser. |
| 64 | On June 27, 2023, Kern County Sheriff's Office conducted a vehicle stop after responding to a brandishing firearm call. Deputies found multiple firearms in the vehicle and arrested A.A., J.P.-2, and K.S. According to the Kern County Sheriff, J.P-2 and K.S. are members of the Varrio Wasco Rifas. One of the pistols recovered were traced back to **KIMBALL** as the original purchaser. |
| 65 | On September 2, 2023, Fresno Police Department arrested J.R. after conducting a traffic stop on a motorcycle at a DUI checkpoint. J.R. fled on foot and was arrested after a short foot chase. A firearm was located in J.R.'s bag and a magazine was located in J.R.'s hand. J.R. was arrested for Cal. P.C. § 29800 (Felon in possession of a firearm), Cal. P.C. § 30305 (Possession of ammunition by prohibited person), Cal. P.C. § 25400 (Carrying concealed weapon without a permit), Cal. V.C. § 23152(a) (DUI of Alcohol), and Cal. V.C. § 23152(b) (DUI of .08 or greater). The pistol recovered was traced back to **KIMBALL** as the original purchaser. |

| 66 | On September 15, 2023, Kern County Sheriff's Office responded to a domestic disturbance call for service and arrested R.A. R.A. was wanted for multiple felonies and refused to comply with deputies' commands. R.A. was arrested for Cal. P.C. § 273.5 (Inflicting corporal injury to spouse), Cal. P.C. § 148 (Obstruction a peace officer), Cal. P.C. § 25850(a) (carrying a loaded firearm in public under specific circumstances), and Cal. P.C. § 460(a) (burglary of the first degree). The pistol recovered during the arrest traced back to **KIMBALL** as the original purchaser. |
|---|---|

Members of the investigative team are currently still working on getting an accurate number of firearms that **KIMBALL** transferred to himself personally from his previous FFL. However, the current estimated number of transferred firearms to **KIMBALL** is approximately 700.

8.     On March 27, 2022, the Federal Firearms Licensing Center (FFLC) received an application for a FFL from Joshua **KIMBALL** under the business entity, Show Off Sports LLC. **KIMBALL** stated that he is the sole member of the LLC and would also be the sole applicant/employee conducting firearms transactions.  The proposed business location is leased and is zoned as commercial/office space.  On April 27, 2022, an ATF Investigator met with **KIMBALL** to review and make corrections to the FFL application and discuss the operating plan for the license operations (suppliers, financing, store security, etc.).  **KIMBALL** documented that he held previous FFLs under his name only as a sole proprietor, that one FFL was in Huggins, Missouri and went out of business on December 8, 2021, and one FFL was in Bakersfield, California that went out of business on February 4, 2022.  The qualification inspection was concluded with a complete and thorough review of the laws and regulation regarding the acquisition, manufacturing and transfer of firearms.  The NICS unit of the FBI had cleared **KIMBALL** on March 30, 2022, and the FFLC issued the current FFL on May 5, 2022.

**C.     KIMBALL surrenders an FFL in Missouri in November 2021 and obtains a different FFL in California in March 2022.**

9.     On November 24, 2021, **KIMBALL** voluntarily surrendered to ATF the FFL to which the firearms were traced in Missouri. Prior to the surrender, the ATF National Tracing Center made multiple trace requests (eTrace) to that FFL, and a large portion of the traces went unanswered. All FFL's are required to respond to all eTrace requests from the ATF within a timely manner. **KIMBALL** notified the ATF that he no longer had access to the records that were being requested in the eTrace requests and surrendered his FFL to the ATF.

10.     As discussed further below, **KIMBALL** is currently in possession of an FFL (a different FFL than the one he surrendered) and has a storefront named "Show Off Sports LLC", located at 4253 Renfro Road, Bakersfield, CA 93314. The business is actively advertising firearms for sale on their public Facebook account.

11.     On June 6, 2023, the ATF San Francisco Field Division Director of Industry Operations confirmed that over the past year, the aforementioned newly opened FFL has transferred 190 firearms, and one of those firearms was transferred from **KIMBALL**'s FFL to himself personally.

**D.      In a June 14, 2023, undercover operation, KIMBALL discusses his "gun club" allowing members to do a one-time Livescan fingerprinting and then obtain firearms without completing any required forms or complying with the requirements for transferring firearms.**

12.     On June 14, 2023, two CVGTF Fresno PD (FPD) detectives walked into Show Off Sports LLC, the FFL opened by **KIMBALL** in Bakersfield, California in an undercover (UC) capacity.  Their intention was to "window shop" to determine if the FFL was an active gun store.  Detectives were immediately engaged by **KIMBALL** and three other males in conversation about firearms.  **KIMBALL** offered to let the detectives join his "gun club", explaining that by doing a one-time fingerprint Livescan through the California Department of Justice (the same system used by volunteer groups and churches to screen people) the detectives could walk in and out of the FFL with any firearms they want without further paperwork, including not completing 4473s or California background checks. ATF Form 4473 is the form all FFLs are required to have a purchaser fill out before completing the sale of a firearm.

13.     The individuals in the FFL besides **KIMBALL** appeared to be friends/regulars and asked the detectives where else a customer could walk in and out with a silencer the same day.  I believe this indicates that **KIMBALL** is selling silencers without a requisite background check, paperwork, and other requirements under the National Firearms Act.  One of the individuals explained that if one of the detectives had a "muddy" background, or criminal history prohibiting possession of firearms that the detective's girlfriend could complete the paperwork to obtain the firearm(s) that same day. I know that the sale of any firearm under these conditions would constitute a straw purchase. A straw purchase is when an individual purchases or transfers a firearm for another individual who otherwise could not

legally purchase or obtain the firearm. **KIMBALL** provided the undercover detectives a copy of a livescan form and a business card for "Show Off Sports" listing the business address as 4253 Renfro Rd, Bakersfield, CA 93314, and the telephone number as 661-456-5118.

> E.   **On July 27, 2023, a UC visited Show Off Sports LLC, and KIMBALL discussed the "gun club" or the "country club for gun enthusiasts" in further detail, including sales of silencers and short-barreled rifles.**

16.    On July 27, 2023, ATF SA-5493 and ATF SA-6620, acting in a UC capacity, conducted a meeting with **KIMBALL** at Show Off Sports LLC. SA-5493 observed **KIMBALL** behind the counter of the business. SA-5493 advised **KIMBALL** that SA-5493 had stopped by the shop to view the inventory. **KIMBALL** asked SA-5493 where he/she heard of the shop and SA-5493 told **KIMBALL** that SA-5493 had been communicating with the Show Off Sports Instagram account. SA-5493 claimed to not be sure of how the business operated. **KIMBALL** stated, "we're a pretty special company" and "we do a bunch of weird stuff".

17.    **KIMBALL** explained the "Sports Association" to SA-5493. **KIMBALL** advised people that "clear a background check" are encouraged to become members of the association. **KIMBALL** further explained that once someone becomes a member, that person will be extended "certain privileges and rights" to include "off-roster guns", high-capacity magazines, and suppressors. **KIMBALL** then stated in regard to firearms transactions, "walk in, walk out". **KIMBALL** commented that membership comes with a cost. **KIMBALL** advised that the "live scan" (the California background check system) costs approximately $100 and the membership cost is $200 per year. **KIMBALL** then explained that members are expected not to sell the firearms they purchase on the "street" and stated, "we police all of our own people." **KIMBALL** further advised that if any members have an issue, the association should be their first call and if the association is having any problems with a member, "we send people to talk to you". **KIMBALL** described the association as a "country club for gun enthusiasts". **KIMBALL** indicated that he is the owner of Show Off Sports.

18.    The statements provided by **KIMBALL** indicate that **KIMBALL** is currently running Show Off Sports LLC under the guise of a members only club and is likely providing unlawful access of firearms to individuals, including potential individuals who are prohibited from possessing firearms, and

by circumventing the required forms or registration that a purchaser fill out upon the purchase of a firearm.

19.     SA-5493 and SA-6620 began walking around the business and viewing all the firearms on display. SA-5493 and SA-6620 observed several suspected silencers, a short barrel rifle, a shotgun with a silencer affixed to the barrel, and multiple rifles with silencers affixed to the barrel. **KIMBALL** advised SA-6620 that members of the association have access to purchasing firearms such as the shotgun with the affixed silencer. Silencers are required to be registered in the ATF National Firearms Registration and Transfer Record (NFRTR). The possession of a silencer without a valid tax stamp obtained from completing the registration process in the NFRTR is unlawful.

20.     SA-6620 asked about purchasing the short barrel rifle. **KIMBALL** advised SA-6620 to go submit the livescan form and as soon as he does that, to photograph the form, along with his driver's license and birth certificate, and send the photographs to **KIMBALL**'s phone. **KIMBALL** indicated that once the live scan is completed and the photographs have been received, he would be willing to sell the rifle to SA-6620. **KIMBALL** confirmed a sale price of $700 for the rifle and that he would be willing to sell the rifle with a silencer attached to it. **KIMBALL** did not mention anything regarding requiring an ATF tax stamp in order to complete the transaction. The transfer of a National Firearms Act (NFA) firearm to an individual without an ATF tax stamp is prohibited.

**F.      On October 13, 2023, a UC purchased a short-barreled rifle, a handgun, and two suppressors from KIMBALL.**

23.     On October 13, 2023, SA-5493 and SA-6620 entered Show Off Sports LLC and were greeted by **KIMBALL**. SA-5493 told **KIMBALL** that SA-5493 was pumped for this and that the process took forever. **KIMBALL** provided SA-5493 a membership card and stated "There's your number if someone asks for it or someone else does" while referencing the card. **KIMBALL** then provided a form that contained specific regulations to the club to SA-5493 to initial, sign, date, and asked for a "couple hundred bucks" for the membership fee.

24.     SA-5493 asked **KIMBALL** about the form and **KIMBALL** explained, "it's basically that you're not going to do anything stupid, uh, without calling us and asking us" and "you'll communicate with us and talk to us if there's an issue or something comes up, you know, we're your

first phone call. We don't resell anything so like you can't buy for your friends and pawn stuff off".

**KIMBALL** then said, "and like I said, if there's ever an issue or something comes up, we're your first phone call and we'll handle everything from there on out. That way, you don't have to say anything or do anything". SA-5493 asked what to do if SA-5493 got pulled over after leaving the business, to which **KIMBALL** responded, "blow the phone number up" and "I've had guys call at one or two o'clock in the morning". **KIMBALL** stated, "it's been six years, we've never had anybody have an issue because we're all normal people".

25.     **KIMBALL** said, "by the end of the year we're actually going to be franchising out" and "try to pick up a cool gun shop that wants to advance and do cool stuff, that way people could be more local". SA-5493 asked if it was going to be in Riverside County, to which **KIMBALL** responded, "Riverside, San Diego, Orange County, and the up the coast, probably like Paso, Atascadero, Fresno". **KIMBALL** indicated wanting to pick ten locations across the state so "people can flock to them in their local area, and they can still stay in business and support their hardcore customers and be good for everybody". **KIMBALL** stated, "it's hard to trust people, but, it ain't going to be Turner's or Big 5, it ain't going to be any those guys, it's going to be the hardcore guys that got a little shop" and "they're not chasing the money, these guys are competition shooters, their avid hunters, their law enforcement, it's guys that got into the business to do the right thing." **KIMBALL** then said "we don't really want to work with people that have a house, out of their home or nothing, nothing against them, but you know, we want a business. We want, you know, a business, and that way, guys will feel more comfortable legitimate go in there and do all the paperwork, they'll send it to us, we process it, everybody orders hardware, it ships to their or they already have it, they just go pick it up, and that way, you keep the guys that are in it for the long run, making money, and we just support them on the back side, and I mean that's just loyalty right? If you trust this guy, that he's going to do you right, you go in there and see him every single time. We give up a little bit, but I think it drives our endgame faster".

26.     SA-5493 referred to the form and asked, "what do you mean by I will comply with any requests in a timely manner, like are you going to call me in the middle of the night?" **KIMBALL** explained, "Well I mean if something's happening yeah". SA-5493 said "I didn't know if you're going

to call me in the middle of the night and be like, you have to give me that back". **KIMBALL** replied, "no, if something weird comes up, you have to work with us". **KIMBALL** gave an example of an incident that had happened approximately a week prior where a kid that works "for the county" had been in a hunting accident where the kid was shot in the face. **KIMBALL** reached out to the kid and asked "what is the true story from you, cause, we gotta know, if you're out fucking off and you guys were high as a kite and there was 30 packs of beer in the back and then someone got their face blown off? Dude I just want to know, I'm not judging you, but you gotta tell me because if I get question marked I'm going to tell them exactly what you tell me, and if that doesn't add up, you're the guy that's going to get in trouble not me". **KIMBALL** gave another example, "if you're going through a divorce, and you get a restraining order, grab all your shit and come down here and drop it all off". **KIMBALL** gave another example of a customer going through a divorce and had a restraining order, "tell us so we can help you, maybe we know someone, give us the story, we're not here to make fun of you, but, if you don't share, we don't know what to do and you get hit with a weird question. He got all his guns seized by DOJ. He wasn't doing anything illegal, he just didn't know the laws and he didn't comply with the 48 hours, so they showed up to his house two weeks later."

27.    SA-5493 asked if anything was off limits and **KIMBALL** indicated that everything except for the top row was for sale, **KIMBALL** indicated that the top row of firearms were his. SA-5493 asked if **KIMBALL** had anything that was compatible with a suppressor. **KIMBALL** asked if SA-5493 wanted a 9-millimeter or 45. SA-5493 stated "I like 9" and **KIMBALL** showed SA-5493 a Beretta handgun. **KIMBALL** continued to show SA-5493 various firearms that were displayed on the shelves. **KIMBALL** told SA-5493 "suppressors run about $1000, so, just fyi".

28.    SA-5493 asked **KIMBALL** which suppressor would fit the Beretta handgun. **KIMBALL** explained to SA-5493 that there were two options, a 9mm caliber suppressor and a .45 caliber suppressor. **KIMBALL** explained that the 9mm suppressor could shoot lower caliber ammunition but not anything bigger and if SA-5493 was planning on shooting anything bigger than a 9mm caliber, to go with the .45 caliber suppressor. **KIMBALL** also explained the difference between pistol suppressors and rifle suppressors. **KIMBALL** explained the difference between a pistol and rifle suppressor is the

velocity of the ammunition.

29.     SA-5493 asked **KIMBALL** to confirm if the price was $1000 and **KIMBALL** confirmed. **KIMBALL** stated, "we try to keep it fair, I know I've got a lot of guys that are like, 'can we do law enforcement or military discount?'. I treat all the member the same." **KIMBALL** claimed to take the money and put it towards fundraisers and luncheon events.

30.     SA-5493 asked **KIMBALL** if **KIMBALL** would be willing to do a trade or upgrade later on down the road and **KIMBALL** responded, "we work with guys like that" and "we try to make, uh, everyone sell it for whatever's fair, so we throw it up and there's always someone that wants a couple hundred dollars or something different that's no longer available. So that's kind of how that works." **KIMBALL** told SA-5493, "Eventually, the website is supposed to go up and eventually we're going to build into the back of the website, for members, where we could trade and barter, and post things up. It's like Gunbroker but just for us. Internal". **KIMBALL** stated, "the whole idea is to change the firearm industry, get away from all the politics of it".

31.     SA-5493 asked **KIMBALL**, "you ever get anything in here that's full auto?" to which **KIMBALL** responded, "uh, yes, we've played with several of those". SA-5493 asked if they were actual full autos and "not where some guy dremeled down his AR", **KIMBALL** confirmed. **KIMBALL** explained to SA-5493 how to adjust the suppressor length to make it easier to conceal.

32.     SA-5493 observed a short barrel rifle displayed on the wall of the store. SA-6620 asked **KIMBALL** if the rifle had a threaded barrel and **KIMBALL** responded, "it does, so the guy has that is a huge AK guy and so his kid talked him into building it" and "it has a muzzle break at the end and a suppressor". SA-5493 asked if it was a consignment from someone else and **KIMBALL** confirmed. SA-5493 asked, "he's not going to be calling you saying he changed his mind" to which **KIMBALL** replied, "nope, we've already traded out on some other stuff". **KIMBALL** took the Anderson Manufacturing rifle into a back room in the shop to adjust the rifle and told SA-5493, "If it's in a box or a bag or a safe, whatever you have for transport you're fine. Just obviously don't have it loaded, don't have it sitting in the front seat. We try not to bring any undue attention to ourselves, mostly because people are not educated".

33.    SA-5493 purchased the following from **KIMBALL** without completing an ATF Form 4473 or any other required paperwork. No waiting period pursuant to Cal. P.C. § 27540(a) was required. **KIMBALL** did not provide a receipt for the transaction.

    a.  Anderson Manufacturing, AM-15, multi-cal, rifle with serial number 21396779 - $600

        i.  NFA weapon under 26 U.S.C. 5845(a)(3) (a rifle having a barrel or barrels of less than 16 inches in length)

    b.  Beretta USA Corp, M9A4, 9mm, pistol with serial number BER840936 - $1100

    c.  Dead Air, Odessa-9, 9mm, suppressor with serial number OD9-8206 - $1000

        i.  NFA weapon under 28 U.S.C. 5845(a)(7) (any silencer)

    d.  Dead Air, Sandman K, 7.62mm, suppressor with serial number SMK-16143 - $1000

        i.  NFA weapon under 28 U.S.C. 5845(a)(7) (any silencer)

    e.  Membership fee to join SHOW OFF SPORTS "sports association" - $200

    f.  **KIMBALL** also provided 10 manual reloaded rounds of ammunition and a 50-round box of subsonic 9mm ammunition.

34.    SA-5493 paid **KIMBALL** and thanked **KIMBALL** for purchase. **KIMBALL** responded, "It's all about re-education man, sharing and teaching people, because that's the future. If we don't get out of this stupid mindset, then, our kids and their kids, you might as well just hand them plastic hammers and dildos and you're like, go fuck everything. They won't know any different." **KIMBALL** told SA-5493 if SA-5493 runs into a "cool shop down in that area" to let **KIMBALL** know. **KIMBALL** said "we're not trying to work with people that are in it for the money, we want their heart in it. So, if you run into another shop, let us know".

35.    To legally transfer a firearm under the National Firearms Act, 18 U.S.C. § 5812 requires an application to the Secretary of the Treasury containing the name of the transferor, the name of the transferee, the payment of a tax, and the inclusion of a photo and fingerprints of the transferee, among other requirements. Applications will be denied when the receipt of the firearm would be a violation of law. No transfer can take place without the approval of the Secretary of the Treasury that these requirements have been met.

COMPLAINT AFFIDAVIT

22

36.    KIMBALL did not require SA-5493 to fill out an application under § 5812 when he purchased the three NFA firearms on October 13, 2023. By transferring the firearms to SA-5493 without an approved application, KIMBALL was in violation of 18 U.SC. § 5861(e).

37.    Firearms transfers in California also require a waiting period, application, application fee and background check pursuant to Cal. P.C. § 27540(a).

38.    KIMBALL did not require SA-5493 to fill out a California application, pay a fee, or submit to a waiting period prior to purchasing any firearms on October 13, 2023. By transferring the firearms to SA-5493 in violation of those state laws, Kimball was in violation of 18 U.S.C. § 922(b)(2).

39.    Possession of an unregistered NFA weapon is a felony under 26 U.S.C. 5861(d). By transferring NFA firearms to SA-5493 when the possession of those firearms would be a felony, KIMBALL was in violation of 18 U.S.C. § 933(a)(1).

### G.    On October 20, 2023, in a UC call with KIMBALL, KIMBALL discusses structuring a firearms transaction to avoid detection.

40.    On October 20, 2023, SA-5493 placed a recorded phone call to **KIMBALL** at 661-456-5118 regarding the rifle SA-5493 purchased from **KIMBALL** not working. SA-5493 told **KIMBALL** that SA-5493 took the rifle to the range and cycled three or four rounds through it and it did not work. SA-5493 stated SA-6620 offered to purchase it for the same price SA-5493 purchased it from **KIMBALL** and fix it. **KIMBALL** asked, "when you pull the trigger, the firing pin hits the primer, it leaves a dent?", SA-5493 confirmed. **KIMBALL** indicated the issue could be with the ammunition or firing pin. **KIMBALL** stated the firing pin would be approximately ten dollars.

41.    SA-5493 asked **KIMBALL** if **KIMBALL** was okay with SA-5493 selling the rifle to SA-6620, to which **KIMBALL** responded, "we'd have to do paperwork on it, um, cause we'd have to sell it to him as just a lower" and "on the paperwork it'd show as lower". **KIMBALL** said, "he could do what he wants with it, but, um, it'd just be a lower receiver. I don't recommend stuff like that, just sayin, but I mean, if he wants to, we could do it as a lower, but he runs the risk of if he's out shooting or something, he can't point the finger at all of us". SA-5493 said SA-5493 would talk to SA-6620 to get it fixed and keep it instead but SA-5493 was not sure yet. **KIMBALL** responded, "that's a little odd". **KIMBALL** told SA-5493 to give him a heads-up next time SA-5493 is in the area and **KIMBALL**

would make sure he had a spring and firing pin and that it was an easy fix.

### IV.  CONCLUSION

38.  On October 13, 2023, Joshua Ruic **KIMBALL** transferred seven firearms to an undercover ATF agent in violation of multiple federal and state laws. He knew these transfers to be illegal, instructing the agent a week later how to conceal the illegal transaction in case of a transfer to a third party. Furthermore, the pattern of KIMBALL's past transfers, including at least 102 guns recovered in criminal investigations, give him more than reasonable cause to believe that his illegal "gun club" firearms trafficking scheme might result in firearms ending up in circumstances where their possession is a felony. This knowledge was most apparent when he told a pair of undercover agents that if one of them had a "muddy" background they could use a third-party straw purchaser to join the club.

39.  Based upon the above information, I believe probable cause exists that **Joshua Ruic KIMBALL** violated Title 26, United States Code, Section 5861(e), unlawful transfer of a National Firearms Act firearm; Title 18, United States Code, Section 933, trafficking in firearms; and Title 18, United States Code, Section 922(b)(2), unlawful transfer of firearm in violation of State law.  I request that an arrest warrant be issued for **KIMBALL** for the violations.



Sahil Sharma
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) before me this __31st__ day of ___October, 2023___.

Christopher D. Baker
UNITED STATES MAGISTRATE JUDGE

Reviewed as to form by:

/s/ Robert L. Veneman-Hughes
Robert Veneman-Hughes
Assistant U.S. Attorney

# EXHIBIT 2

**U.S. District Court**
**Eastern District of California - Live System (Fresno)**
**CRIMINAL DOCKET FOR CASE #: 1:23-cr-00221-NODJ-BAM-1**

Case title: USA v. Kimball                    Date Filed: 11/16/2023

Magistrate judge case number:  5:23-mj-00041-CDB

---

Assigned to: No District Court Judge
Referred to: Magistrate Judge Barbara A.
McAuliffe

**Defendant (1)**

**Joshua Ruic Kimball**                    represented by  **David A. Torres**
                                                          Law Office of David Torres
                                                          1318 K Street
                                                          Bakersfield, CA 93301
                                                          661-326-0857
                                                          Fax: 661-326-0936
                                                          Email: dtorres@lawtorres.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: CJA Appointment*

**Pending Counts**                                        **Disposition**

18 U.S.C. 933(a) - Trafficking in Firearms
(1)

26 U.S.C. 5861(e) - Unlawful Transfer of
Firearms in Violation of the National
Firearms Act
(2)

18 U.S.C. 922(b)(2) - Unlawful Transfer of
Firearms in Violation of State Law
(3)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                     **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                            **Disposition**

18 U.S.C. § 933 - Trafficking in Firearms;
Case 1:23-cr-00221-NODJ-BAM   Document 34   Filed 04/19/24   Page 36 of 59
26 U.S.C. § 5861(e) - Unlawful Transfer of
NFA Firearms; 18 U.S.C. § 922(b)(2)-
Unlawful Transfer of Firearms

**Plaintiff**

**USA**                                   represented by   **Robert Veneman-Hughes**
                                                           DOJ-USAO
                                                           2500 Tulare Street
                                                           Suite 4401
                                                           Fresno, CA 93721
                                                           559-388-1516
                                                           Email: robert.veneman-hughes@usdoj.gov
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Designation: Assistant US Attorney*

                                                           **Fresno Forfeiture Unit**
                                                           United States Attorney's Office, Fresno
                                                           2500 Tulare Street
                                                           Suite 4401
                                                           Fresno, CA 93721
                                                           559-497-4000
                                                           Email: usacae.ecffrsfor@usdoj.gov
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/2023 | 1 | CRIMINAL COMPLAINT as to Joshua Ruic Kimball (1). (Hall, S) [5:23-mj-00041-CDB] (Entered: 10/31/2023) |
| 10/31/2023 | 3 | APPLICATION to Seal Complaint by USA as to Joshua Ruic Kimball. (Hall, S) [5:23-mj-00041-CDB] (Entered: 10/31/2023) |
| 10/31/2023 | 4 | SEALING ORDER, signed by Magistrate Judge Christopher D. Baker on 10/31/2023 as to Joshua Ruic Kimball. (Hall, S) [5:23-mj-00041-CDB] (Entered: 10/31/2023) |
| 11/01/2023 | 5 | ORDER UNSEALING COMPLAINT, signed by Magistrate Judge Christopher D. Baker on 11/1/2023 as to Joshua Ruic Kimball. (Hall, S) [5:23-mj-00041-CDB] (Entered: 11/01/2023) |
| 11/02/2023 | 6 | MINUTES (Text Only) for proceedings held before Magistrate Judge Christopher D. Baker: INITIAL APPEARANCE re CRIMINAL COMPLAINT as to Joshua Ruic Kimball held on 11/2/2023. Defendant consented to appearance via video conference. Financial affidavit received; the Court appointed counsel to represent defendant. Defendant advised of rights, charges, maximum penalties. True name stated as charged. NOT GUILTY PLEA ENTERED. Discovery/reciprocal discovery requested- SO ORDERED. **Preliminary Examination set for 11/16/2023 at 02:30 PM in Bakersfield (CDB) before Magistrate Judge Christopher D. Baker.** DETENTION was addressed: Government moved for detention; defendant consented to an interview by Pretrial Services and requested a further detention hearing be set. Upon agreement of the parties, |

| | | Detention Hearing set for 11/9/2023 at 02:30 PM in Bakersfield (CDB) Before Magistrate Judge Christopher D. Baker. Defendant ORDERED TEMPORARILY DETAINED pending further proceedings. Government Counsel: Robert Veneman-Hughes present via video. Defense Counsel: David Torres present. Pretrial Services Officer: Frank Guerrero present. Custody Status: (C) Lerdo- present via video. Court Reporter: ECRO: S. Hall. (Hall, S) [5:23-mj-00041-CDB] (Entered: 11/02/2023) |
|---|---|---|
| 11/02/2023 | 8 | ARREST WARRANT RETURNED Executed on 11/1/2023 as to Joshua Ruic Kimball. (Lundstrom, T) [5:23-mj-00041-CDB] (Entered: 11/03/2023) |
| 11/03/2023 | 9 | NOTICE of ATTORNEY APPEARANCE: David A. Torres appearing for Joshua Ruic Kimball. Attorney Torres, David A. added. (Torres, David) [5:23-mj-00041-CDB] (Entered: 11/03/2023) |
| 11/06/2023 | 10 | ORDER APPOINTING COUNSEL, signed by Magistrate Judge Christopher D. Baker on 11/6/2023 as to Joshua Ruic Kimball. Attorney David A. Torres appointed for Joshua Ruic Kimball. (Hall, S) [5:23-mj-00041-CDB] (Entered: 11/06/2023) |
| 11/08/2023 | 11 | MOTION for BAIL REVIEW *Motion to Release on a Combination of Factors* by Joshua Ruic Kimball. Motion Hearing set for 11/9/2023 at 02:30 PM in Bakersfield (CDB) before Magistrate Judge Christopher D. Baker. (Torres, David) [5:23-mj-00041-CDB] (Entered: 11/08/2023) |
| 11/08/2023 | 12 | MEMORANDUM by USA. *in Support of Detention* (Veneman-Hughes, Robert) [5:23-mj-00041-CDB] (Entered: 11/08/2023) |
| 11/09/2023 | 13 | SHACKLING MINUTE ORDER, signed by Magistrate Judge Christopher D. Baker on 11/9/2023: Pursuant to Local Rule 401, the Court hereby determined that the appropriate restraint level for Joshua Ruic Kimball is Fully Shackled (USM # 84923-510). (Hall, S) [5:23-mj-00041-CDB] (Entered: 11/09/2023) |
| 11/09/2023 | 14 | MINUTES (Text Only) for proceedings held before Magistrate Judge Christopher D. Baker: DETENTION HEARING as to Joshua Ruic Kimball held on 11/9/2023. Government moved for detention, argued, submitted. Defendant ORDERED RELEASED on O/R with numerous pretrial conditions as set forth on the record, including third party custody and home incarceration. Defendant's release is DELAYED pending surrender of his passport and proof of divestment of firearms. No later than November 13, 2023, the United States of America is ORDERED to file a report certifying either (1) it obtained and transferred to the Pretrial Services Office defendant Kimball's passport, or (2) after a diligent search, including of the location where counsel for defendant Kimball reported during the detention hearing defendant's passport was located, it was unable to locate the passport. The Preliminary Hearing remains set for 11/16/2023 at 2:30 PM before Magistrate Judge Christopher D. Baker. Government Counsel: Robert Veneman-Hughes present. Defense Counsel: David Torres present. Pretrial Services Officer: Evette Perez present via video. Custody Status: (C) present. Fully Shackled, USM #84923-510. Court Reporter: ECRO: S. Hall. (Hall, S) [5:23-mj-00041-CDB] (Entered: 11/09/2023) |
| 11/16/2023 | 15 | MINUTES (Text Only) for proceedings held before Magistrate Judge Christopher D. Baker: ARRAIGNMENT AND PLEA re INDICTMENT as to Joshua Ruic Kimball (1) Counts 1,2,3 held on 11/16/2023. Defendant advised of rights, charges, maximum penalties; acknowledged receipt of indictment; waived formal reading/rights. True name stated as charged. NOT GUILTY PLEA and DENIAL ENTERED. Discovery/reciprocal discovery- SO ORDERED. **Status Conference set for 2/14/2024 at 01:00 PM in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.** In light of the supplemental Pretrial Services Report and the change in circumstances due to the |

# EXHIBIT 3

PHILLIP A. TALBERT
United States Attorney
ROBERT L. VENEMAN-HUGHES
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 5:23-MJ-00041-CDB |
| Plaintiff, | **UNITED STATES' MOTION FOR DETENTION** |
| Vs. | Date: November 9, 2023 |
| JOSHUA KIMBALL, | Time: 2:30 PM |
| Defendant. | Judge: Hon. Christopher D. Baker |

The United States urges this court to detain Joshua Kimball both as a flight risk and a danger to the community.

## I.  LAW

The United States moves for detention under 18 U.S.C. § 3142(f)(1)(E), a felony that involves the possession of a firearm, and under 18 U.S.C. § 3142(f)(2)(B), a case that involves a serious risk that a person will obstruct or attempt to obstruct justice.

The burden lies on the Government to show a risk of nonappearance by a preponderance of evidence, *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985), and danger to the community by clear and convincing evidence, *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The

Court makes that determination by considering the factors in 18 U.S.C. § 3142(g), making an "individualized" determination. *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006).

## II. ARGUMENT

### A. All four 18 USC 3142(g) factors support detention

#### 1. Nature and Circumstances of the Offense Charged

The defendant is charged with serious felonies, and the circumstances of those offenses are particularly concerning. As outlined in the affidavit, ECF No. 1, Kimball was the architect of a firearms trafficking scheme linked to at least 103 guns found in connection with crimes throughout California, Nevada, Arizona and Mexico. Since the complaint was sworn, agents have uncovered additional evidence that the defendant's firearms trafficking scheme in Bakersfield through "Show Off Sports" was connected to and a continuation of his prior firearms trafficking scheme through a Missouri FFL and "American Warrior Enterprises."[1] The government proffers that these two businesses and federal firearms licenses are part of the same course of related and continuing conduct based on the location of firearms recovered, statements made by the defendant, and an analysis of firearms records.

The seriousness of defendant's conduct, especially considering the circumstances of the charged offenses, supports detention in this case.

#### 2. Weight of Evidence

The weight of the evidence is the least important of the various factors, but it weighs in favor of detention. Here, defendant sold firearms as part of his illegal scheme to an undercover agent. He made statements both to the undercover agent and in interviews with agents prior to the service of the search warrant that show he knew the wrongfulness of his actions, telling the undercover agent how to conceal firearms transactions so that no one "points a finger at us", and then lying about the character of his

---

[1] Defendant's Missouri FFL was connected to an organization called "American Warrior Enterprises" or AWE. Agents have determined that AWE operated as a similar illegal gun trafficking scheme or gun club as did Show Off Sports, LLC. The government proffers that Kimball shut down AWE when investigators in Missouri began to look into the operation, moving his operations to Show Off Sports LLC.

business to agents prior to the service of warrants. Computer and other records recovered in the search

warrant also provide evidence that this sale was not a one-off occurrence but the regular course of

defendant's business, and multiple witnesses have given statements that the defendant sold them illegal

firearms.

While the weight of the evidence is the least important factor, the weight here is strong, and so

supports detention.

### 3. History and Characteristics of Defendant

Defendant has a felony conviction for fraud in Kern County case BF139514A with a date of

conviction on June 18, 2012.[2] According to court records, defendant took out eight insurance policies on

a vehicle from eight different insurance companies, with seven of those policies obtained between

December 20, 2007 and December 27, 2007. On December 31, 2007, Kimball reported to all the

companies that his vehicle had been in an accident. Traffic collision reconstruction experts determined

that the accident could not have occurred in the manner Kimball described.

Defendant was also arrested for a felony related to brandishing in a road rage incident in Arizona

in 2022. The case dismissed after a law enforcement agency failed to preserve a necessary piece of

evidence.

Defendant has substantial out of state ties. He maintained a firearms business in Missouri until

late 2021 (ECF No. 1 at 15) at an address the defendant continues to use as the registration address for

his primary vehicle. His primary vehicle is also registered in Missouri. Defendant indicated to ATF

agents who interviewed him in 2021 in connection with that Missouri FFL that he was operating in

Missouri at that time.

Additionally, defendant told agents just prior to the service of the search warrant that he had

formerly been involved with some sort of firearms business in Texas. At the time of his arrest,

---

[2] Defendant had his conviction sealed and set aside in 2014 pursuant to Cal. P.C. 1203.4. Relief under this section is limited and does not affect firearm prohibitions or stop a prior conviction from being used to enhance a sentence. *United States v. Hayden*, 255 F.3d 768, 771-772 (9th Cir. 2001). Because of a clerical error on the part of the Kern County Superior Court, the 2012 felony was never entered into criminal databases and portions of the file were lost or destroyed. However, Kern County court records clearly show the date of conviction, the charge of conviction, and its final disposition.

defendant's sole occupation was the operation of his illegal firearms scheme and the Show Off Sports firearms shop.

Collectively, these circumstances indicate that the defendant has substantial out-of-district ties and has a history of felony conduct, all supporting detention.

### 4. Nature and Seriousness of the Danger to the Community

According to agents, approximately 900-1000 firearms remain unaccounted for that were acquired by defendant through his illegal firearms trafficking scheme.

Approximately 700 guns were unaccounted for when defendant closed his Missouri FFL. Over 100 of those guns have been recovered in connection with crimes in California and nearby states, centered around Bakersfield, Calif. Of those recoveries, significant clusters of guns have been located connected to members of the Bulldogs criminal street gang in Fresno, the Norteno criminal street gang in Bakersfield, and Armenian drug traffickers in Los Angeles County. Roughly 600 guns are still unaccounted for.

Over 100 guns were seized by agents during the service of search warrants in this case, including over ten silencers and at least two fully automatic machine guns. Short-barrel rifles and shotguns were also seized in connection with this case. However, a preliminary search by agents of Show Off Sports' records suggest that approximately 300 and 400 guns remain unaccounted for that should have been in Show Off Sports' inventory[3]. Defendant additionally indicated to agents in an interview that between 200 and 400 guns belonging to Show Off Sports had been "loaned" to others, corroborating this estimate.

Defendant has additionally engaged in obstruction of justice conduct. He told undercover agents to call him prior to speaking to police about the guns he sold, which the government proffers was an attempt to coordinate stories in case of law enforcement discovery. He additionally instructed undercover agents in how to conduct illegal firearms transactions so that no one could "point the finger

---

[3] The government proffers this as a preliminary estimate. Agents are still working through the seized records, and according to agents the records were poorly maintained. The actual number of unaccounted-for guns could be higher or lower; this number represents a best estimate based on the state of the evidence at the time of this motion.

at all of us." When agents informed defendant he was under arrest at the conclusion of their interview, he lunged away from agents and attempted to shut down and lock his laptop so they could not seize his records.

Defendant finally told agents, both undercover and identified, that he had multiple unknown business partners in his operation.

Taken collectively, defendant poses a significant danger to the community were he released. With approximately 1000 guns unaccounted for, defendant has access to a ready store of weapons with which to continue his illegal business. Defendant further may communicate with other, unknown members of his conspiracy in an effort to conceal evidence or warn them about law enforcement investigation. Defendant has already signaled his intention to undercover officers to coordinate witness accounts of his firearms scheme, and if released the government believes he will contact his former "customers" in an effort to conceal his activities. Prior government interventions, including the forfeiture of his prior FFL, have not deterred the defendant from selling illegal guns, many of which have ended up in criminal hands. The government argues the defendant will continue to do so if he is released. The proffered evidence additionally shows the defendant's intent to obstruct justice and destroy evidence when and where he can.

**B. No condition or combination of conditions can ensure the defendant's appearance or the safety of the community if he is released**

Conditions and combinations of conditions are good only so far as the defendant can be trusted to follow them. The defendant is accused of orchestrating a scheme to sell a large quantity of illegal firearms, a scheme he has represented involves many unknown partners. Agents have been unable to locate approximately 1000 firearms that records suggest defendant should have in his possession, and defendant said that at least 200-400 of those firearms had been loaned to "employees". One of the risks in this case is that defendant will direct those unknown partners or employees to dispose of, sell, or conceal these illegal firearms.

Risks like this are those "that involve communications and are therefor not susceptible to effective monitoring." *United States v. Hir*, 517 F.3d 1081, 1093 (9th Cir. 2008). Such conditions

UNITED STATES' MOTION                    5
FOR DETENTION

depend only on the "good faith compliance" of the defendant. *Id.* Given the defendant's attempts to obstruct justice, his pre-instruction of potential witnesses, his history of fraud, and his prior iterations of this scheme, the defendant cannot be trusted to comply. Instead, as he said in a recorded jail telephone call on the morning of November 8, 2023, "bad news is always good publicity," indicating his intent to continue his illegal scheme.

Defendant's proffered conditions are also insufficient. Electronic monitoring does not prevent communication, and a search and seizure waiver does not prevent him from directing confederates to take action related to the unaccounted-for weapons. A third-party custodian also cannot effectively monitor his communications, and given his ties out of the District a promise to stay in the district is only as good as the defendant's word.

### III.  CONCLUSION

The Court should detain the defendant pending trial as a flight risk and a danger to the community.

PHILLIP A. TALBERT
United States Attorney

Date: November 8, 2023

By:  /s/ Robert L. Veneman-Hughes
ROBERT L. VENEMAN-HUGHES
Assistant United States Attorney

# EXHIBIT 4

 Gmail

**Destiny Cardona <dcardona@lawtorres.com>**

## Activity in Case 5:23-mj-00041-CDB USA v. Kimball Detention Hearing.
2 messages

**caed_cmecf_helpdesk@caed.uscourts.gov** <caed_cmecf_helpdesk@caed.uscourts.gov>
To: CourtMail@caed.uscourts.gov

Thu, Nov 9, 2023 at
4:28 PM

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of California - Live System**

### Notice of Electronic Filing

The following transaction was entered on 11/9/2023 at 4:28 PM PST and filed on 11/9/2023
**Case Name:**       USA v. Kimball
**Case Number:**    5:23-mj-00041-CDB
**Filer:**
**Document Number:** 14(No document attached)

**Docket Text:**
**MINUTES (Text Only) for proceedings held before Magistrate Judge Christopher D. Baker: DETENTION HEARING as to Joshua Ruic Kimball held on 11/9/2023. Government moved for detention, argued, submitted. Defendant ORDERED RELEASED on O/R with numerous pretrial conditions as set forth on the record, including third party custody and home incarceration. Defendant's release is DELAYED pending surrender of his passport and proof of divestment of firearms. No later than November 13, 2023, the United States of America is ORDERED to file a report certifying either (1) it obtained and transferred to the Pretrial Services Office defendant Kimball's passport, or (2) after a diligent search, including of the location where counsel for defendant Kimball reported during the detention hearing defendant's passport was located, it was unable to locate the passport. Government Counsel: Robert Veneman-Hughes present. Defense Counsel: David Torres present. Pretrial Services Officer: Evette Perez present via video. Custody Status: (C) present. Fully Shackled, USM #84923-510. Court Reporter: ECRO: S. Hall. (Hall, S)**

**5:23-mj-00041-CDB-1 Notice has been electronically mailed to:**

David A. Torres &nbsp &nbsp dtorres@lawtorres.com, aflores@lawtorres.com, dcardona@lawtorres.com, emartinez@lawtorres.com

Robert Veneman-Hughes &nbsp &nbsp robert.veneman-hughes@usdoj.gov, caseview.ecf@usdoj.gov, melina.ortiz.gonzalez@usdoj.gov, usacae.ecffrsgen@usdoj.gov

**5:23-mj-00041-CDB-1 Electronically filed documents must be served conventionally by the filer to:**

# EXHIBIT 5

 Gmail

**Destiny Cardona <dcardona@lawtorres.com>**

---

## Activity in Case 1:23-cr-00221-ADA-BAM USA v. Kimball Arraignment.
1 message

---

**caed_cmecf_helpdesk@caed.uscourts.gov** <caed_cmecf_helpdesk@caed.uscourts.gov>
To: CourtMail@caed.uscourts.gov

Thu, Nov 16, 2023 at
4:35 PM

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Eastern District of California - Live System**

### Notice of Electronic Filing

The following transaction was entered on 11/16/2023 at 4:35 PM PST and filed on 11/16/2023
**Case Name:**      USA v. Kimball
**Case Number:**    1:23-cr-00221-ADA-BAM
**Filer:**
**Document Number:** 15(No document attached)

**Docket Text:**
**MINUTES (Text Only) for proceedings held before Magistrate Judge Christopher D. Baker: ARRAIGNMENT AND PLEA re INDICTMENT as to Joshua Ruic Kimball (1) Counts 1,2,3 held on 11/16/2023. Defendant advised of rights, charges, maximum penalties; acknowledged receipt of indictment; waived formal reading/rights. True name stated as charged. NOT GUILTY PLEA and DENIAL ENTERED. Discovery/reciprocal discovery- SO ORDERED. Status Conference set for 2/14/2024 at 01:00 PM in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe. In light of the supplemental Pretrial Services Report and the change in circumstances due to the unavailability of the proposed third party custodian, oral motion by the Government for bail review and further detention hearing; submitted by defendant. FURTHER DETENTION HEARING HELD pursuant to 18 USC 3142(f) - Government moved for detention, Defendant argued, submitted. Defendant ORDERED DETAINED and REMANDED into the care, custody and control of the United States Marshals Service. Excludable started as to Joshua Ruic Kimball: XT Start: 11/16/2023 Stop: 2/14/2024. Time is to be excluded under the Speedy Trial Act in that good cause exists and that the ends of justice outweigh the interest of the public and the defendant in a speedy trial. For the reasons set forth on the record, the continuance requested is granted for good cause and the Court finds the ends of justice outweigh the interest of the public and the defendant in a speedy trial. The court instructed government counsel under Rule 5(f) to comply with its disclosure obligations under *Brady v. Maryland*. Government Counsel: Robert Veneman-Hughes present via video. Defense Counsel: David Torres present. Pretrial Services Officer: Evette Perez present via video. Custody Status: (C) present. Fully Shackled, USM #84923-510. Court Reporter: ECRO: S. Hall. (Hall, S)**

# EXHIBIT 6

TORRES | TORRES-STALLINGS
A LAW CORPORATION
David A. Torres, State Bar No. 135059
1318 "K" Street
Bakersfield, CA 93301
Tel: (661) 326-0857
email: dtorres@lawtorres.com

Attorneys for Defendant
JOSHUA KIMBALL

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:23-CR-00221-NODJ-BAM |
| Plaintiff, | |
| vs. | **MOTION TO APPOINT THIRD-PARTY CUSTODIAN** |
| JOSHUA KIMBALL, | DATE: December 7, 2023 |
| Defendant, | TIME: 2:30PM |

TO: MAGISTRATE CHRISTOPHER D. BAKER; ROBERT VENEMAN-HUGHES,

ASSISTANT UNITED STATES ATTORNEY; AND TO YVETTE PEREZ AND FRANK

GURRERO, PRETRIAL SERVICE OFFICERS:

### CASE STATUS

This matter comes before the Court on motion by the Defendant, Joshua Kimball, seeking

appointment of a third-party custodian. Mr. Kimball is charged with trafficking in firearms,

unlawful transfer of NFA firearms, and unlawful transfer of firearms, in the Eastern District of

California. On November 9, 2023, a detention hearing was held before the Hon. Christopher D.

Baker. After a lengthy hearing, the Magistrate ruled there were a combination of conditions

which would reasonably assure the appearance of the defendant as required for the safety of the

community, to with, home detention.  At the hearing, Ms. Jenny Kelsey Penton initially agreed to

serve as third-party custodian.  However, after the conclusion of trial, and prior to the signing of

documents formalizing the appointment of Ms. Penton, she declined to sign requisite documents.

As such, Mr. Kimball has remained in custody.

### PROPOSED THIRD PARTY CUSTODIAN

Ms. Jennifer Tuttle, age 51, has agreed to serve as third party custodian. Ms. Tuttle is an

acquaintance of Jenny Kelcy Penton and Joshua Kimball. Ms. Tuttle is employed at a local plant

shop, the Leaf Lounge in Bakersfield and has resided in Kern County since 1988.  She is aware

of the responsibilities expected of a third-party custodian and is prepared to adhere to all

conditions set by the court.

### CONCLUSION

Based upon the foregoing, Mr. Kimball requests that the Court finds a combination of factors

and/or conditions exist supporting the release of Mr. Kimball. Mr. Kimball will appear at all

pretrial proceedings in this case, and there is no lawful basis for his pretrial detention.


Dated: December 4, 2023                                     Respectfully Submitted,

                                                          _/s/ David A. Torres_____
                                                          David A. Torres
                                                          Attorney for Joshua Kimball

# EXHIBIT 7

PHILLIP A. TALBERT
United States Attorney
ROBERT L. VENEMAN-HUGHES
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 1:23-CR-00221-NODJ-BAM |
| Plaintiff, | **UNITED STATES' OPPOSITION TO RELEASE UPON BAIL REVIEW** |
| Vs. | |
| JOSHUA KIMBALL, | Date: December 7, 2023<br>Time: 2:30 PM<br>Judge: Hon. Christopher D. Baker |
| Defendant. | |

The United States urges this court upon bail review to continue to detain Joshua Kimball as a

danger to the community and additionally as a flight risk.


I.      **LAW**

The Court's prior detention decision controls and the hearing should not reopen unless the Court

finds that defendant has presented information that (1) was previously unknown and (2) material to the

issue of detention. 18 U.S.C. § 3142(f).

Should the court reopen, the same standard applies in the reopened hearing as in the original

detention hearing: the Government must show a risk of nonappearance by a preponderance of evidence,

*United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985), and danger to the community by clear

and convincing evidence, *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Court makes

that determination by considering the factors in 18 U.S.C. § 3142(g), making an "individualized"

determination. *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006).

## II.   ARGUMENT

Defendant proffers changed circumstances in the form of a new proposed third-party custodian.

The government concedes that under these circumstances, reopening the issue of detention is

appropriate. However, the government continues to believe that defendant is a flight risk and a danger to

the community, particularly in light of new information gained since detention was first argued on

November 9, 2023. Additionally, the government at the time of filing has insufficient evidence to

conclude that the proposed third-party custodian, Ms. Tuttle, is a suitable custodian.

### A. Risk of Flight

Previously, the United States proffered in open court that the defendant had deceived pre-trial

services in his initial interview by failing to disclose substantial bank accounts[1] to pre-trial services as

well as a second vehicle with out-of-state plates. Since then, the government has uncovered evidence

that there may be additional accounts or financial instruments still not accounted for.[2]  At the first bail

review in the case, the government also proffered an intercepted call from November 10 between the

defendant and a different person, N.V., he was trying to recruit as a third-party custodian. In that call,

defendant told N.V. that "what I needed was like one to two weeks, because then I could make other

arrangements once other days come about." This call occurred the day after the court ordered defendant

released on home confinement for the duration of his case, and the government believes this call is

evidence that defendant may seek to flee.

Having now listened to the entire recording, the government is additionally proffering that

Kimball further told N.V. later in that call that "someone has to be responsible, but I also have to work."

---

[1] As of July 2023, those accounts contained approximately $80,000.

[2] More than $250,000 has passed through the defendant's identified bank accounts within approximately the last year, with some of that money transferred out to accounts and locations the government is still investigating.

UNITED STATES' OPPOSITION                    2
TO RELEASE

Taken in context with Kimball's other statements as discussed below, the government believes this is evidence of defendant's intent to continue to traffick firearms.

Upon close review of the defendant's pre-trial services report, the government notes additionally that the defendant told pre-trial services that he did not recall when he had lived in Missouri, despite having resided there as recently as 2021 and having had conversations with ATF agents about his time in Missouri during the service of search warrants in this case. The government also notes that defendant did not mention any ties to the state of Texas, despite telling ATF agents that had he had been involved in a business there.

Taken collectively with the information previously outlined in the government's motion for detention (ECF No. 12), the government believes that the concealed financial accounts, concealed vehicle, jail call and concealed and minimized out of state ties indicate that the defendant poses a risk of flight and should be detained for that reason.

**B. Danger to the Community**

When detaining the defendant as a danger to the community, the court noted the specific danger posed because of his access to firearms and the risk he will seek to dispose of firearms or continue his illegal firearms distribution scheme. In addition to the government's earlier moving papers (ECF No. 12), the government proffers to the court that additional investigation has determined that defendant should have had approximately 450 firearms at his shop and approximately 700 firearms in his personal collection. As of December 5, 2023, roughly 308 guns have been recovered in total.[3] Defendant also had over 100 National Firearms Act-regulated weapons (including silencers, machine guns, short-barrel rifles) registered to him, with approximately 70 recovered to date.

The government additionally proffered orally to the court on November 9 a jail call by the defendant on November 8 where he said, "You know the best part of this is that it's going to reaffirm everything I've been building for the last [two/three[4]] years, and make it solidified, that's why I'm not really upset. I knew it was going to come one day, I just didn't think it was going to come like this. You

---

[3] Because defendant's records were incomplete and firearms are still being recovered, numbers are approximations.

[4] The agent could not determine if Kimball said 'two' or 'three'.

know what they say, just like Trump, bad news is always good publicity." The government believes this call to be evidence of the defendant's intention to return to gun trafficking if he is released.

The government also directs the court's attention to the defendant's pre-trial interview, where he also dissembled about his involvement in firearms trafficking. There, he indicated that he was the "manager" of Show-Off Sports rather than the owner.

Taken collectively, the government believes that the defendant's history of illegal firearms trafficking as described in the complaint (ECF No. 1) and the government's prior moving papers (ECF No. 12), the volume of unaccounted for firearms, the defendant's statements at the time of warrant service that he was looking to "franchise" in other areas, and the defendant's statements in jail calls both before and after his detention hearing indicating he intends to continue his business show by clear and convincing evidence the threat defendant poses to the community. His past and present actions demonstrate his willingness to illegally sell firearms, and the list of unaccounted firearms demonstrate his present ability to continue to do so. For those reasons, the court should find he is a danger.

The United States has extremely limited information about defendant's proffered third-party custodian (ECF No. 20) and does not yet know if she is acceptable to pre-trial services. Even so, a third-party custodian cannot effectively deter conspiracy-like conduct or communication-based crimes like gun sales. Such crimes those "that involve communications and are therefor not susceptible to effective monitoring." *United States v. Hir*, 517 F.3d 1081, 1093 (9th Cir. 2008). Such conditions depend only on the "good faith compliance" of the defendant. *Id.* This court noted the same in the initial detention hearing, citing *Hir*, and agreed to release only on stringent conditions and after a lengthy colloquy with the then-proposed third party custodian. As discussed at length above, defendant has been far from candid with pre-trial services, and he has manifested a desire to keep selling firearms in jail calls. He is not the sort of person who can be trusted to abide by conditions, and so no condition or combination of conditions can assure the safety of the public.

//

//

### III.  <u>CONCLUSION</u>

The Court should detain the defendant pending trial as a flight risk and a danger to the community.

PHILLIP A. TALBERT
United States Attorney

Date: December 5, 2023

By: /s/ Robert L. Veneman-Hughes
ROBERT L. VENEMAN-HUGHES
Assistant United States Attorney

# EXHIBIT 8

 Gmail

**Destiny Cardona <dcardona@lawtorres.com>**

## Activity in Case 1:23-cr-00221-NODJ-BAM USA v. Kimball Order on Motion for Bail Review.

1 message

**caed_cmecf_helpdesk@caed.uscourts.gov** <caed_cmecf_helpdesk@caed.uscourts.gov>
To: CourtMail@caed.uscourts.gov

Thu, Dec 7, 2023 at 3:43 PM

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of California - Live System**

### Notice of Electronic Filing

The following transaction was entered on 12/7/2023 at 3:43 PM PST and filed on 12/7/2023
**Case Name:**       USA v. Kimball
**Case Number:**   1:23-cr-00221-NODJ-BAM
**Filer:**
**Document Number:** 23(No document attached)

**Docket Text:**
**MINUTES (Text Only) for proceedings held before Magistrate Judge Christopher D. Baker: BAIL REVIEW HEARING as to Joshua Ruic Kimball held on 12/7/2023. Motion for Bail Review (Doc. [20]) argued, submitted. For the reasons set forth on the record, motion DENIED. Defendant will remain detained pending trial. Status Conference remains set for 2/14/2024 at 1:00 PM before Magistrate Judge Barbara A. McAuliffe. Government Counsel: Robert Veneman-Hughes present via video. Defense Counsel: David Torres present. Pretrial Services Officer: Evette Perez present via video. Custody Status: (C) present. Fully Shackled, USM #84923-510. Court Reporter: ECRO: S. Hall. (Hall, S)**

**1:23-cr-00221-NODJ-BAM-1 Notice has been electronically mailed to:**

Fresno Forfeiture Unit &nbsp &nbsp usacae.ecffrsfor@usdoj.gov

David A. Torres &nbsp &nbsp dtorres@lawtorres.com, aflores@lawtorres.com, dcardona@lawtorres.com, emartinez@lawtorres.com

Robert Veneman-Hughes &nbsp &nbsp robert.veneman-hughes@usdoj.gov, caseview.ecf@usdoj.gov, melina.ortiz.gonzalez@usdoj.gov, usacae.ecffrsgen@usdoj.gov

**1:23-cr-00221-NODJ-BAM-1 Electronically filed documents must be served conventionally by the filer to:**